Good morning, Your Honors. My name is Michelle Villaseñor-Grant and I represent the Defendant Appellant, Leo Bartolos Olmos-Esparza. There are a number of issues in this case, however many of them have already been addressed this morning, so I'm just going to focus on the warrant of deportation and whether that should have been entered into evidence without the deportation officer who signed the document testifying as to that. In this case, that's exactly what happened. The warrant of deportation was entered into evidence by the AFAL custodian, Agent Cicerelli, and he merely stated that this was a document that's made at or near the time when someone is removed from the United States. However, this particular document didn't even have a date on it. The document is in the excerpt of record at... Yeah, but does that go to admissibility or the weight of the document? Well, I think that it kind of goes to both. The problem is that if this is a business record or a public record, then it still needs to be reliable. And without the dates on it, then that goes to the reliability of the document because it needs to be kept in a normal course. You would think that dating the document would be part of that normal course, especially since there's a space on the document itself for the date of removal in between port and banner of removal, and there's no date listed there. The document's at page 282. The other problem is that the document itself is, in fact, testimonial. It says, Departure Witness By, and then it's signed by the agent. Well, but testimonial in the Crawford sense is a term of art. Correct. Because any document, in a broad sense, testifies because it's purporting to set forth facts. Crawford recognizes that business records fall within the concept of permissible, non-testimonial evidence. So why is this not... Why is this really not a business record? Since business records will have testimony in the sense of conveying information, why is this not a business record, then? Well, I think there's a couple reasons. First, I think that business records are not normally made by a party to the action. And in this case, Border Patrol... A private party? Well, because this document is made by a Border Patrol agent or by the government, and then it's entered into against a criminal defendant, it's more similar to a public record or an agent's report than it is to a business record. The other problem with it is that it's made for the purpose of, if the person returns, either using it against them in an administrative matter, in other words, in a restatement proceeding, although not any longer under Morales-Escuero, but in another deportation proceeding, or... It's tracking the in and outs of the particular alien, isn't it? I think that's another reason for it, but I... It isn't under the normal concept of a business record if it's... And again, coming back to Crawford, Crawford was, Justice Scalia seemed concerned and invoked a tremendous amount of common law history to suggest that if a document is prepared for the litigation or in anticipation of a particular litigation, then it becomes like an affidavit or something like that, or a declaration. That's one thing. But if it's kept for a purpose, predating any actual institution of litigation, then he seemed to put that off in the side of non-testimonial. So you're saying because it might be used in a litigation, it falls on the testimonial side? I think that's part of it. The other thing that we, that seems to have changed a lot is the definition of what a business was at the common law and what a business is defined as now. Because I don't think the Immigration and Naturalization Service or Department of Homeland Security would be normally defined as a business. And at common law, and in fact, Wittgen even was, when he was writing about that business records exception, he said the business is now much broader than it was at common law. And so I think that's what we don't know. And so just sticking this into the business records exception and assuming that it's fine, I think you still need to look to see whether it really is a business record at, in the traditional sense at common law, since that was the concern of the justices in Crawford. You suggest that it's a public record or an official record? Do you think that it does or doesn't qualify under that? I think that if it's a public record, then it's more akin to the 8038B, which is a public record that can't be introduced against a criminal defendant in a criminal case. If the different barter stations kept a list of the people who were deported each day from that entry, that could come in as a business record? I honestly don't know. I think it would depend on how it was kept and who it was kept by. Because what makes these records so odd is that they're actually done by a deportation officer, someone who's given that job. And they're done in a number of different ways. Some people actually watch each person cross the border and then sign after. Some people sign before they even get the person to the border. And some people sign during the whole process when they have a whole busload of people that they're watching cross. And so that's why there's not really the reliability factors of the business record and why the person normally comes to testify and is under cross-examination. The government points out that usually that person doesn't remember the particular individual. But knowing their practice and the way that they do it is very important because you still don't know if the verification is in fact a true verification. Maybe they just stopped the people at the border and then that was it. But you don't know since that person didn't testify as to how they normally conduct their business because different agents do it in different ways. So I think it would depend on the regularity that was attested to. But we assume that an individual who signs one of these warrants has every motivation to get that person across the border. It's their business and it's their job. And there's every indicia, every liability when they sign one of those. Well, I don't think that that can stop the inquiry, though, even if that is the case. And I don't necessarily think that it is. Because, like I said, I think you need to go back to the common law and look at whether it would fall under the business records exception at that time. And I think that because it is a governmental agency, I don't think that it would have fallen under that purview. Was this offered at trial as a business record? I believe that it was entered under the public records exception, but I can't recall. I believe it was. Excuse me? Was it objected to under code? Yes. It was objected to. Opposing it as a legitimate, as illegitimate under the evidence code as opposed to Crawford? Yes. It was objected to under hearsay. And, in fact, in pretrial motions, all APOL documents were objected to under hearsay and not falling under the public record or business record exception. Be all that as it may, the client admitted that he was deported and was removed from this country on November 20th, 2000. So what difference does any of that make? Well, one thing is in United States v. Smith, it said that you can't just have the defendant's statements be used against him solely for an element, for the elements of the offense. And that is an element of the offense, obviously, being physically removed from the United States. And this is I mean, if you're questioning the reliability of the warrant and your client admits that he was deported on November 20th, 2000, how could it possibly be unreliable? Well, one thing we don't know is whether my client is saying he was order-deported on that day or whether Now he's been order-deported by an I.J. and was removed from the country on November 20th, 2000. I think you the problem is that you can't just use a defendant's statement to corroborate the government's documents, because the government document still needs to be subjected to the rules for the Confrontation Clause. And so if the Confrontation Clause isn't If the Sixth Amendment is violated, it's violated. And it doesn't matter whether it's reliable or not. So that's the first issue. Okay. I thought you were saying that it's an unreliable document. No. I was just saying that's part of the inquiry. But it's still violative of the Sixth Amendment, which is the main argument. And as Mr. Habachek argued earlier, I would also argue that a full remand is required. I know the government is going to state because it was a mid-range sentence, the range of 63 to 78, and he received a sentence of 70 months, that it's not required. But I believe, as Your Honor was saying earlier, that you don't know what the judge would have done if the guidelines had not been mandatory. And there were objections made to the guidelines and all increases, including criminal history calculations. Thank you. Okay. Thank you. The opposing counsel has very nicely made part of your sentencing argument for you, so we can skip that one. Yes. I appreciate that very much. Good morning again, Your Honors. May it please the Court, Kevin Mulcahy for the United States. In fact, I would argue the same as I did with Mr. Habachek's case, and I won't restate it again, save Your Honors hearing my voice anymore this morning. With regard to the warrant of deportation, there are two main principles or issues I'd like to address. And the first is that it does not violate the Confrontation Clause, even post-Crawford. And the reason for that is it is not a testimonial document, in that it was not prepared with an eye towards litigation by any party in the proceedings. Instead — Could you step back a moment? Yes, Your Honor. Just tell me how the foundation was laid for this in the trial court. Was it offered as a business record or as a public record? Was there any contest over this? What was the nature of it? There was a contest. Ms. Villasenor-Grant is correct. There was a contest pretrial, as is typical in our court, with documents from the A file as a whole. And I suspect, although I can't recall, that it was most likely objected to at the time of its entry as well to preserve that objection. And did the government try to justify it, bring it in under the evidence code, under particular theory? Yes, Your Honor. The government, consistent with the case law of this circuit, puts forth warrants of deportation as business — or, excuse me, public records. Public records. And with public records in mind, we also — we note that this record does more than just serve as evidence in the 1326 case. It goes, as Your Honor indicated, to keep track of a defendant. It goes to — for example, if a defendant were to come and ask at a subsequent deportation hearing or subsequent asylum application or something to that effect, his history and his touches with the INS would become relevant under the various 212Cs and Hs that, fortunately, we don't have to get into in this case. But the point is, his contact with what was the INS and now DHS is important when that organization determines whether or not he or she is going to be allowed to remain in the United States. And so this document is not made in anticipation of litigation in the 1326 case solely. It also, in addition to keeping track of the defendant, is made to reflect a fact relating to our security at the border and that this defendant was deported. And so it reflects actions taken on specific days. All that in mind, even if Your Honors had trouble with the government bringing in warrants of deportation under either evidence or rules of evidence or Confrontation Clause issues, he was certainly harmless here. The defendant made statements admitting that he had been deported. In fact, he made statements admitting that his deportation was to Mexico through Calexico on November 20th. Those are found, the exits of Record 181 and 182. What about her point that you can't use a defendant's admission to cure a constitutional defect? We certainly couldn't use it if that were the only evidence in this case. But there was more. And specifically, this defendant entered the United States – excuse me, this defendant was arrested when a search warrant was going to be served upon his brother. When he was found, he lied to the agents about his citizenship. The circumstances of that arrest, those two show a guilty intent. That lie is further evidence that he didn't have any right to be in the country. With regard, though, to the deportation, the warrant would supplement the statements of the defendant and the statements on more than one occasion by the defendant regarding his deportation. And I've, again, already addressed the sentencing issue, so I'll stop unless there are other questions. I'd like to ask you a question on the sentencing. Yes, Your Honor. In the colloquy, when the judge imposes a sentence, he goes into quite a bit of detail as to why he sentenced as he sentenced. Do you think this is one case where it's adequate to say that we know what the court would have done? Yes, Your Honor. For the reasons I stated previously, with regard to the mid-range of the sentence, in addition to the lengthy statements made by the judge in what he considered in conducting the sentencing hearing. So a remand in this case would simply send it back for the court to make the same findings that it already found. Thank you. Okay. Thank you, Your Honor. I found the objection during the trial. It was at ER 200. There's an objection made when the warrant of deportation was entered as to hearsay. And as to the sentencing issue, on page 300 of the record, the judge is going through quite a few factors, but he ends up running into the heartland. And that is tied up with the guidelines considerations in determining whether to give someone a departure or not. And so I don't think that you can tell from the record whether the same sentence would have been imposed or not had he known that the guidelines were advisory. And as I stated earlier, I don't believe that the warrant of deportation nor the CNER was harmless because at least to the deport, there were only his statements because this was one of those odd cases where it's actually arrested at a home many, many miles from the border. And so there weren't those circumstantial evidence showing that he may have just come from Mexico. Thank you.
judges: B. Fletcher, Rymer, Fisher